## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

SHANE JOHNSTON,

                Applicant,

v.                                      CIV-06-0570 RB/LAM

JOE ROMERO, Warden, et al.,

                Respondents.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION[1]

## PROPOSED FINDINGS

1.       **THIS MATTER** is before the Court on ***Respondents' Motion to Dismiss Petition With Prejudice*** (*Doc. 7*) (hereinafter, "Motion to Dismiss"), filed on August 21, 2006.  The Court has considered the parties' submissions and relevant law.[2]  For the reasons set forth below, the Court recommends that the Motion to Dismiss be **GRANTED**, that Mr. Johnston's ***Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody*** (*Doc. 1*) (hereinafter, "Application") be **DENIED** as without merit, and that this case be **DISMISSED WITH**

---

[1] **Within ten (10) days after a party is served with a copy of these Proposed Findings and Recommended Disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommended disposition.  A party must file any objections  with the Clerk of the United States District Court for the District of New Mexico within the ten (10) day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

[2] In support of their Motion to Dismiss, Respondents filed ***Respondents' Memorandum in Support of Motion to Dismiss Petition With Prejudice*** (*Doc. 8*), on August 21, 2006.  On August 25, 2005, Mr. Johnston filed his ***Petitioner['] s Motion to Argue Ag[a]inst Respondents['] Motion to Dismiss Petition With Prejudice*** (*Doc. 10*) (hereinafter, "Response to Motion to Dismiss"), which the Court construes as a response to the Motion to Dismiss. Respondents did not file a reply to the Response to Motion to Dismiss, making the Motion to Dismiss ready for ruling.

**PREJUDICE**.  Because all of the issues in this case can be resolved on the record before the Court, the Court **FINDS** that an evidentiary hearing is unnecessary.  *See* 28 U.S.C. § 2254(e)(2); Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts; *Trice v. Ward*, 196 F.3d 1151, 1159 (10th Cir. 1999).

2.      Mr. Johnston is incarcerated and proceeding *pro se*.  On June 26, 2006, he initiated this case by filing his Application.  The claims in Mr. Johnston's Application are somewhat difficult to understand; however, because he is a *pro se* litigant, the Court construes his Application liberally and holds it to a less stringent standard than pleadings drafted by an attorney.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  In construing Mr. Johnston's claims in the Application, the Court finds it significant that he describes the judgment of conviction under attack in this case as an order entered by the state district court on September 13, 2005, revoking Mr. Johnston's state probation and partially suspended sentence and sentencing him to serve the remainder of the suspended sentence for a period of three years and three-hundred and one days.[3]  The Court also notes that it construes Mr. Johnston's claims somewhat differently than Respondents do in their *Answer* (*Doc. 9*) and their Motion to Dismiss.[4]

3.      The Court construes Mr. Johnston's claims as follows: (a) he was denied the right to appeal the order entered on September 13, 2005, which revoked his probation and partially suspended sentence and sentenced him to serve the remainder of the suspended sentence; (b) he was denied constitutionally effective assistance of counsel because his attorney failed to file an appeal from the

_____

[3]*See* Application at 2.  The Application gives September 12, 2005, as the entry date of the revocation order but the order was actually entered on September 13, 2005.  *See* Application, Exhibit K at 1.

[4]*See* Answer at 2; Motion to Dismiss at 1.

2

September 13, 2005, order after he asked the attorney to do so; (c) he was denied constitutionally effective assistance of counsel because his attorney lied to him about how much time he would serve in prison if he admitted violating the conditions of his probation in the 2005 probation revocation proceeding; and (d) his probation revocation was unlawfully induced by unkept promises because he was promised that his probation would end with his parole in a total of fifteen months and, instead, he was required to serve the remaining time from his partially suspended sentence as a consequence of the probation revocation.[5]

4.      Respondents concede that Mr. Johnston has exhausted available state court remedies as to his claims in this case.[6]   However, because Mr. Johnston's claims in this case and the underlying state proceedings are somewhat difficult to understand, it is not entirely clear to the Court whether all of his claims in this case, as the court construes them, have been exhausted.  Nevertheless, in the interests of judicial economy, and pursuant to 28 U.S.C. § 2254(b)(2), the Court will consider all of Mr. Johnston's claims in this case on the merits and recommend, for the reasons set forth below, that relief be denied.  *See* 28 U.S.C. § 2254(b)(2) stating that, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  *See also Patton v. Mullin*, 425 F.3d 788, 809-10 (10th Cir. 2005) (citing 28 U.S.C. § 2254(b)(2) as authority for the consideration of unexhausted § 2254 claims on the merits).

---

[5]*See* Application at 5-11.

[6]*See* Answer at 2.

## I. *Factual and Procedural Background*

5.       On April 28, 2003, Mr. Johnston pled guilty in criminal cases numbered CR-2002-1085-6 and CR-2002-1101-6 in the State District Court in San Juan County, New Mexico, and was convicted of the following crimes: (a) one count of Receiving Stolen Property over $2,500, a third degree felony, contrary to N.M. Stat. Ann. § 30-16-11(A) and (G) (1978); and (b) one count of Possession of a Firearm or Destructive Device by a Felon, a fourth degree felony, contrary to N.M. Stat. Ann. § 30-7-16 (1978) in CR-2002-1085-6; and (c) one count of Burglary of an Automobile, a fourth degree felony, contrary to N.M. Stat. Ann. § 30-16-03(B) (1978) in CR-2002-1101-6.[7]  He also admitted being an habitual offender with two prior felony convictions.[8]

6.       On May 12, 2003, Mr. Johnston personally appeared before Judge Thomas J. Hynes in cases CR-2002-1085-6 and CR-2002-1101-6 for sentencing.[9]   At the sentencing hearing, Mr. Johnston was represented by his attorney, Emit Rudolfo.[10]

7.       On May 14, 2003, Judge Hynes entered a judgment, order and commitment in cases CR-2002-1085-6 and CR-2002-1101-6 in which he sentenced Mr. Johnston.[11]   In sentencing Mr. Johnston, Judge Hynes took into account Mr. Johnston's admission to being an habitual offender.

---

[7]See Answer, Exhibits A and B.  Mr. Johnston's plea agreement, a copy of which is Exhibit B to the Answer, does not reference the charge of possession of a firearm or destructive device by a felon, contrary to N.M. Stat. Ann. § 30-7-16 (1978) in CR-2002-1085-6; however, Mr. Johnston does not dispute that he pled guilty to this charge and Judge Hynes sentenced him on this charge, and the other charges, at the same time as reflected in the judgment, sentence order and commitment, a copy of which is Exhibit A to the Answer.

[8]*See* Answer, Exhibit A at 1.

[9]*Id.*

[10]*Id.*

[11]*See* Answer, Exhibit A.

8.      In case CR-2002-1085-6, Judge Hynes sentenced Mr. Johnston to the following: (a) as to the receiving stolen property count, three years of imprisonment, enhanced by four years for being an habitual offender with two prior felony convictions, for a total term of incarceration of seven years, followed by mandatory parole for a period of two years; and (b) as to the possession of a firearm or destructive device by a felon count, eighteen months of imprisonment, followed by mandatory parole for a period of one year.[12]  The sentences for these counts were imposed to run consecutively, for a total term of incarceration of eight and one-half years.[13]

9.      In case CR-2002-1101-6, Judge Hynes sentenced Mr. Johnston to eighteen months of imprisonment, enhanced by four years for being an habitual offender with two prior felony convictions, for a total term of incarceration of five and one-half years, followed by mandatory parole for a period of one year.[14]

10.     The sentences in cases CR-2002-1085-6 and CR-2002-1101-6 were imposed to run concurrently, for a total term of incarceration of eight and one-half years.[15]  Judge Hynes suspended all but four years of this sentence and ordered that upon completion of this term of incarceration, Mr. Johnston was to be placed on probation for a period of four and one-half years.[16]  In addition, Judge Hynes ordered that Mr. Johnston be given credit for pre-sentence confinement of two-hundred

---

[12]*Id.* at 1-2.

[13]*Id.* at 2.

[14]*Id.*

[15]*Id.*

[16]*Id.* at 2-3.

and ten days, and credit for post-sentence confinement until delivery to the New Mexico Corrections

Department.[17]

11.     On August 7, 2003, Mr. Johnston filed a *pro se* motion to reconsider his sentence in

cases CR-2002-1085-6 and CR-2002-1101-6.[18]  Judge Hynes denied this motion in an order entered

on August 12, 2003.[19]

12.     On October 16, 2003, Mr. Johnston filed a second *pro se* motion for reconsideration

of his sentence in cases CR-2002-1085-6 and CR-2002-1101-6.[20]  The parties' submissions do not

indicate whether this motion was granted or denied, but the disposition of this motion is not material

to resolution of this case.

13.     On April 2, 2004, Mr. Johnston filed a third *pro se* motion for reconsideration of his

sentence in cases CR-2002-1085-6 and CR-2002-1101-6.[21]  Judge Hynes denied this motion in an

order entered on April 6, 2004.[22]

14.     Based on the parties' submissions, the Court infers that Mr. Johnston was released

from prison on parole some time in late 2004; however, the parties have not submitted any specific

documentation regarding the date of Mr. Johnston's parole.

---

[17]*Id.* at 3.

[18]*See* Answer, Exhibit C.

[19]*See* Answer, Exhibit D.

[20]*See* Answer, Exhibit E.

[21]*See* Answer, Exhibit G.

[22]*See* Answer, Exhibit H.

15.     On January 14, 2005, Judge Hynes entered an order of probation in cases CR-2002-1085-6 and CR-2002-1101-6 which placed Mr. Johnston on supervised probation for a period of four years, five months and twenty-nine days, beginning on December 9, 2004, and continuing until June 8, 2009, or "wait until further order of the court."[23]  This order provided that the court could issue a warrant for Mr. Johnston's arrest and revoke his probation at any time during the probation term if he violated any condition of probation.[24]

16.     On July 11, 2005, Judge Hynes issued bench warrants for Mr. Johnston's arrest in cases CR-2002-1085-6 and CR-2002-1101-6, for failure to comply with the conditions of his probation and Mr. Johnston was arrested on August 11, 2005.[25]

17.     On August 1, 2005, the State of New Mexico filed a motion in cases CR-2002-1085-6 and CR-2002-1101-6 asking the court to revoke Mr. Johnston's probation for multiple violations of the terms and conditions of his probation.[26]  On September 12, 2005, Judge Hynes held a hearing on the motion at which Mr. Johnston personally appeared with his attorney, Robert Eason, and admitted having violated the terms and conditions of his probation as alleged in the motion.[27]

18.     On September 13, 2005, Judge Hynes entered an order granting the State's motion, revoking Mr. Johnston's probation and partially suspended sentence, and sentencing Mr. Johnston

---

[23]*See* Answer, Exhibit I.

[24]*Id.* at 2.

[25]*See* Answer, Exhibit I to Exhibit W, at first, fifth and sixth pages.

[26]*See* Answer, Exhibit J.  The conditions of probation allegedly violated by Mr. Johnston included failing to report to his probation officer as required, failing to follow all orders and instructions of his probation officer, failing to appear for drug testing, and failing to attend an outpatient treatment program.  *Id.* at 2-3.

[27]*See* Answer, Exhibit K at 1.

to serve the remainder of the suspended sentence for a period of three years and three-hundred and one days.[28]  This sentence was imposed to run concurrently with the remainder of the sentence imposed in cases CR-2002-1085-6 and CR-2002-1101-6 that Mr. Johnston would serve for violating his parole, and Judge Hynes' order required that Mr. Johnston be given various credits against his sentence.[29]

19.     On September 23, 2005, Mr. Johnston filed a *pro se* motion in cases CR-2002-1085-6 and CR-2002-1101-6 asking Judge Hynes to reconsider and modify the sentence resulting from Mr. Johnston's probation revocation.[30]  As grounds for the motion, Mr. Johnston argued that his parole would be reinstated if Judge Hynes agreed to reconsider the sentence resulting from his probation revocation.[31]  On September 26, 2005, as an apparent supplement to his motion for reconsideration, Mr. Johnston filed a letter to Judge Hynes in which Mr. Johnston appeared to argue that his attorney promised him that the sentence he would have to serve as a consequence of his probation revocation would not exceed the sentence he would have to serve for violating his parole and that he would not have to serve more than sixteen more months in prison.[32]  This letter also stated that Mr. Johnston was going to appear before the parole board on September 27, 2005, and that it looked as if his parole would be reinstated.[33]  In this letter, Mr. Johnston asked Judge Hynes to

---

[28]*See* Answer, Exhibit K.  This order denied Mr. Hynes credit against his sentence for the thirty-one day period that he was subject to arrest and not entitled to probation credit against his sentence.

[29]*See* Answer, Exhibit K at 2.

[30]*See* Answer, Exhibit L.

[31]*Id.* at first page.

[32]*Id.* at third page.

[33]*Id.*

reinstate his probation if his parole were reinstated by the parole board.[34]  On October 27, 2005, Judge Hynes entered an order denying Mr. Johnston's motion.[35]

20.     On October 31, 2005, Mr. Johnston, represented by counsel, filed a second motion asking Judge Hynes to reconsider Mr. Johnston's  sentence in cases CR-2002-1085-6 and CR-2002-1101-6 resulting from his probation revocation.[36]  In this motion, Mr. Johnston argued that at the time of his sentencing for the probation revocation, his parole had been revoked and this was a factor raised during the sentencing; however, since that time, the parole board had decided it was appropriate to re-parole Mr. Johnston who was, therefore, "no longer being held for a parole violation beyond the necessary time to design a new parole plan."[37]  Mr. Johnston argued that because he was being held for violating probation, a new parole plan could not be implemented until he completed his sentence resulting from the probation violation.[38]  Mr. Johnston stated that he would like to be able to re-parole from the Department of Corrections and comply with the terms and conditions of both parole and probation, and he asked Judge Hynes to reconsider his sentence and either reinstate his probation or set a hearing to review his sentence.[39]  On November 8, 2005, Judge Hynes entered an order denying this motion.[40]

---

[34]*Id.*

[35]*See* Answer, Exhibit M.

[36]*See* Answer, Exhibit N.

[37]*Id.* at 1.

[38]*Id.*

[39]*Id.* at 1-2.

[40]*See* Answer, Exhibit O.

21.    On December 27, 2005, Mr. Johnston filed a *pro se* petition for writ of habeas corpus in case CR-2002-1101-6, challenging the order that revoked his probation and partially suspended sentence and sentenced him to serve the remainder of the suspended sentence for a period of three years and three-hundred and one days.[41]  In his habeas petition, Mr. Johnston contended that before his hearing on the probation violation, the State of New Mexico agreed to recommend that he finish his probation while he finished the balance of his parole time which was sixteen months, if he admitted the probation violation.[42]  He seemed to argue that Judge Hynes failed to honor this agreement by the State.[43]  He also argued that Judge Hynes improperly added thirty-one days to his original probation expiration date of June 8, 2009, for a period of time that he was an absconder, because there was not substantial evidence at the probation violation hearing to support this addition of time.[44]  On January 5, 2006, Judge Hynes entered an order denying this habeas petition and finding that the sentence resulting from Mr. Johnston's probation violation was imposed to run concurrently with the sentence resulting from his parole revocation.[45]

22.    On March 6, 2006, Mr. Johnston filed a second *pro se* petition for writ of habeas corpus in cases CR-02-1085-6 and CR-2002-1101-6, challenging the order that revoked his probation and partially suspended sentence and sentenced him to serve the remainder of the suspended sentence.[46]  In this habeas petition, Mr. Johnston argued, in conclusory fashion, that he was denied

---

[41]*See* Answer, Exhibit P.

[42]*Id.* at seventh page.

[43]*Id.* at seventh and eighth pages.

[44]*Id.* at ninth page.

[45]*See* Answer, Exhibit Q.

[46]*See* Answer, Exhibit R.

the right to appeal, that he was denied effective assistance of counsel at trial and on appeal, and that his conviction was obtained by an unlawfully induced guilty plea based on unkept promises.[47]   On March 21, 2006, Judge Hynes entered an order denying this motion.[48]

23.      On April 3, 2006, Mr. Johnston filed another motion in cases CR-2002-1085-6 and CR-2002-1101-6 asking Judge Hynes to reconsider his sentence resulting from the parole and probation violation.[49]   In this motion, Mr. Johnston appeared to argue that he was eligible for re-parole but was unable to do so because of his sentence resulting from the probation violation.[50] Mr. Johnston argued that this was contrary to his understanding that his sentence resulting from the probation violation would run concurrently with his sentence resulting from the parole revocation.[51] As relief, Mr. Johnston asked the court to either reinstate his probation or discharge him from his sentence resulting from the probation violation.[52]   Judge Hynes denied this motion in an order entered in cases CR-2002-1085-6 and CR-2002-1101-6 on April 7, 2006.[53]

24.      On April 3, 2006, Mr. Johnston filed a *pro se* petition for writ of certiorari with the New Mexico Supreme Court, seeking review of the order entered by Judge Hynes on

---

[47]*Id.* at 3.

[48]*See* Answer, Exhibit S.  Judge Hynes' order refers to the second habeas petition as a "Motion to Reconsider the Denial of Defendant's Motion for Writ of Habeas Corpus."  *Id.*

[49]*See* Answer, Exhibit T.

[50]*Id.* at second page.

[51]*Id.* at third page.

[52]*Id.* at third and fourth pages.

[53]*See* Answer, Exhibit U.

March 21, 2006, that denied Mr. Johnston's second *pro se* petition for writ of habeas corpus.[54] Although the petition for writ of certiorari is somewhat difficult to understand, it appears to have presented the following issues: (a) whether the state district court erred in failing to advise Mr. Johnston of his right to appeal; (b) whether Mr. Johnston was denied effective assistance of counsel by his attorney's failure to file an appeal, as he requested; and (c) whether the state district court erred in failing to reinstate his probation after he was allowed to re-parole since he was told that whatever happened with his parole would happen with his probation.[55]  On June 12, 2006, without issuing an opinion, the New Mexico Supreme Court entered an order denying Mr. Johnston's petition for writ of certiorari.[56]

25.     On June 26, 2006, Mr. Johnston filed his Application for federal *habeas corpus* relief with this Court.  In its Answer, the State of New Mexico concedes that Mr. Johnston's Application was timely filed,[57] and the Court agrees that the Application was timely filed.

### I.  *Claims for Habeas Corpus Relief*

### A.  *Standards of Review*

26.     The provisions of 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996[58] (hereinafter, "AEDPA"), govern this case.[59]  The Court cannot grant

---

[54]*See* Answer, Exhibit V.

[55]*Id.* at 2-5.

[56]*See* Answer, Exhibit X.

[57]*See* Answer at 1.

[58]110 Stat. 1214.

[59]The standards in AEDPA apply to this case because the Application was filed after the effective date of AEDPA which was April 24, 1996.  *See Upchurch v. Bruce*, 333 F.3d 1158, 1162 (10th Cir. 2003), *cert. denied*,

(continued...)

Mr. Johnston habeas relief pursuant to 28 U.S.C. § 2254(d), unless the decision in his state court proceeding (a) is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (b) is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1)-(2). The United States Supreme Court has construed these statutory provisions, and established rules for applying them, in a series of cases decided since the enactment of AEDPA.[60]

27.    The phrase "clearly established Federal law, as determined by the Supreme Court of the United States" in 28 U.S.C. § 2254(d)(1), "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

28.    Under 28 U.S.C. § 2254(d)(1), a state court decision is "contrary to" United States Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law." *Williams v. Taylor*, 529 U.S. at 413. A state court decision is also "contrary to" Supreme Court precedent "if the state court decides [the] case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* However, a state court decision is not "contrary to" Supreme Court precedent "simply because the court did not cite [Supreme Court] opinions . . . . [A] state court need not even be aware of [Supreme Court]

---

[59](...continued)
540 U.S. 1050 (2003).

[60]*See, e.g., Bell v. Cone*, 543 U.S. 447 (2005) (*per curiam*); *Mitchell v. Esparza*, 540 U.S. 12 (2003) (*per curiam*); *Wiggins v. Smith*, 539 U.S. 510 (2003); *Lockyer v. Andrade*, 538 U.S. 63 (2003); *Woodford v. Visciotti*, 537 U.S. 19 (2002) (*per curiam*); *Early v. Packer*, 537 U.S. 3 (2002) (*per curiam*); *Ramdass v. Angelone*, 530 U.S. 156 (2000); *Williams v. Taylor*, 529 U.S. 362 (2000); *see also Bush v. Neet*, 400 F.3d 849 (10th Cir. 2005); *Jackson v. Ray*, 390 F.3d 1254 (10th Cir. 2004); *Miller v. Mullen*, 354 F.3d 1288 (10th Cir. 2004).

precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) (quoting *Early v. Packer*, 537 U.S. 3, 8 (2002)). *See also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (noting presumption that state courts know and follow the law); *Miller v. Mullen*, 354 F.3d 1288, 1292-1293 (10th Cir. 2004) (AEDPA applicable notwithstanding state court's failure to cite or discuss federal case law). Indeed, a state court need not even discuss the federal law applicable to a claim in order for AEDPA standards to apply. So long as the state court does not dismiss a claim on procedural grounds, a federal court applies the AEDPA standards regardless of whether there is any reasoning supporting the "decision."[61] Moreover, if a state court's decision does not conflict with the  reasoning or the holdings of Supreme Court precedent, the decision is not "contrary to" such precedent under 28 U.S.C. §2254(d)(1) simply because the federal court holds a different view where Supreme Court precedent "is, at best, ambiguous." *Mitchell v. Esparza,* 540 U.S. at 17.

29.     Under 28 U.S.C. § 2254(d)(1), a state court decision involves an "unreasonable application" of Supreme Court precedent  if it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. at 413. However, "a federal habeas court may not issue [a writ of habeas corpus] simply because [it] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."

---

[61]*See Cook v. McKune*, 323 F.3d 825, 830-831 (10th Cir. 2003); *see also Chadwick v. Janecka*, 312 F.3d 597, 606 (3d Cir. 2002) (discussing that in *Weeks v. Angelone*, 528 U.S. 225 (2000), the Supreme Court applied AEDPA standards of review to a claim the state court dismissed summarily without any explanation of how it reached its decision); *compare Morris v. Burnett*, 319 F.3d 1254, 1267 (10th Cir. 2003) ("[w]hen the state court addresses the great bulk of the issues raised by the petitioner's brief in that court but omits to address a particular claim, we have inferred that the claim was not decided 'on the merits' in the state court . . . [and,] [t]herefore, we do not apply the deferential review set forth in 28 U.S.C. § 2254(d) with  respect to that claim.")

*Lockyer v. Andrade*, 538 U.S. at 75-76 (internal quotations and citations omitted). "Rather, that application must be objectively unreasonable." *Id.* at 76.

30.     Under 28 U.S.C. §§ 2254(d)(2) and (e)(1), a state court decision is based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" only if it is shown by "clear and convincing evidence" that the factual finding is incorrect. *See Wiggins v. Smith*, 539 U.S. 510, 528 (2003).

31.     The deferential AEDPA standard of review applies to habeas claims that were adjudicated on the merits in state court proceedings. *See* 28 U.S.C. § 2254(d). If the state court did not adjudicate a claim on the merits, and the claim is not otherwise procedurally barred, a federal court reviews the claim *de novo* under the pre-AEDPA standard of review. *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004) (citing *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999)). Under the pre-AEDPA standard of review, a state court's findings of fact are afforded a presumption of correctness and both legal conclusions and mixed questions of law and fact are reviewed *de novo*. *See Castro v. Ward*, 138 F.3d 810, 815-816 (10th Cir. 1998). "[T]he presumption of correctness will continue to apply to any findings of fact underlying mixed questions." *Id.* at 816 (quoting *Case v. Mondragon*, 887 F.2d 1388, 1393 (10th Cir. 1989)). See *also* 2 Randy Hertz and James S. Liebman, Federal Habeas Corpus Practice and Procedure, § 32.1, at 1565 (5th ed. 2005) (if § 2254 habeas claim was not adjudicated on the merits, federal court must employ pre-AEDPA standard of *de novo* review of legal and mixed legal-factual rulings).

### B.  Analysis

32.     Subject to the foregoing standards, the Court considers Mr. Johnston's claims in this proceeding.

### 1. Denial of Right to Appeal Order Revoking Probation
### and Partially Suspended Sentence

33.     For his first claim, Mr. Johnston contends that he was denied the right to appeal the

order entered on September 13, 2005, revoking his probation and partially suspended sentence and

sentencing him to serve the remainder of the suspended sentence for a period of three years and three-

hundred and one days, with this sentence to be served concurrently with the sentence resulting from

his parole violation.[62]   This claim by Mr. Johnston is conclusory and lacks any supporting factual

allegations.   Mr. Johnston's Application fails to identify who he considers responsible for the alleged

denial of the right to appeal and fails to elaborate on the circumstances surrounding the alleged denial

of the right to appeal.

34.     Mr. Johnston's *pro se* status does not relieve him of the obligation to allege sufficient

facts on which a recognized legal claim can be based.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110

(10th Cir. 1991) (conclusory allegations alone, without supporting factual averments, are insufficient

to state a valid claim).   Moreover, although Mr. Johnston's *pro se* Application must be liberally

construed, the Court is "not required to fashion [his] arguments for him where his allegations are

merely conclusory in nature and without supporting factual averments."  *United States v. Fisher*,

38 F.3d 1144, 1147 (10th Cir. 1994) (citing *Hall v. Bellmon*, 935 F.2d at 1110).   Mr. Johnston's

Application provides no basis for determining the nature of this claim.   Accordingly, the Court finds

that habeas relief is not warranted on this claim.

---

[62]*See* Application at 6-7.

### 2. *Ineffective Assistance of Counsel - Failure to Appeal Order Revoking Probation and Partially Suspended Sentence*

35.     For his second claim, Mr. Johnston contends that he was denied constitutionally effective assistance of counsel because his attorney failed to file an appeal, after he asked his attorney to do so, from the September 13, 2005, order which revoked his probation and partially suspended sentence and sentenced him to serve the remainder of the suspended sentence.[63]   The parties' submissions show that Mr. Johnston was represented by counsel at the probation revocation hearing, held on September 12, 2005, and that he admitted all the probation violations that he was charged with by the State of New Mexico.[64]

36.     To establish a claim of constitutionally ineffective assistance of counsel in violation of the Sixth Amendment of the United States Constitution, a petitioner must show: (a) that his attorney's representation fell below an objective standard of reasonableness; and (b) that there is a reasonable probability that, but for the attorney's deficient performance, the outcome of the proceeding would have been different.   *Strickland v. Washington*, 466 U.S. 668, 687-88 and 694 (1984).  Failure to meet either part of this test defeats an ineffective assistance of counsel claim.  *Id.* at 687.

37.     The Court recommends that this claim be denied for two reasons. First, Mr. Johnston's allegations regarding this claim are entirely conclusory.  Apart from conclusory allegations, he offers no factual support for his claim to have instructed his attorney to file an appeal of the order revoking

---

[63]*See* Application at 7-9.

[64]*See* Answer, Exhibit K at 1.

17

his probation and partially suspended sentence.  Mr. Johnston's conclusory allegations do not suffice

to state a claim for relief with regard to this claim.  *See Hall v. Bellmon*, 935 F.2d at 1110.

38.     Second, Mr. Johnston's ineffective assistance of counsel claim presupposes that he

had a constitutional right to counsel in the probation revocation proceeding.  The Supreme Court has

held that a previously sentenced probationer has a constitutional right to counsel in a probation

revocation proceeding only if the denial of counsel would violate due process of law.  *See*

*Gagnon v. Scarpelli*, 411 U.S. 778 (1973).  Generally, this will be true only if the probationer makes

"a timely and colorable claim (i) that he has not committed the alleged violation of the conditions

upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is

uncontested, there are substantial reasons which justified or mitigated the violation and make

revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or

present."  *Id.* at 790.  A constitutional right to counsel may also exist if a probationer appears to be

incapable of representing himself in a revocation proceeding.  *Id.* at 790-91 ("[T]he responsible

agency also should consider, especially in doubtful cases, whether the probationer appears to be

capable of speaking effectively for himself.").  Mr. Johnston admitted the probation violations that

he was charged with and he has made no showing in this case that there were any reasons the

revocation of his probation was inappropriate.  Nor has he made any showing that he was incapable

of speaking effectively for himself during the probation proceeding.  Thus, Mr. Johnston has failed

to demonstrate, in this case, that he had a constitutional right to counsel during his probation

revocation proceeding.  Because Mr. Johnston has made no showing that he had a due process right

to counsel in his probation revocation proceeding, he cannot assert an ineffective assistance of

counsel claim in this case as a result of his attorney's representation in the revocation proceeding.

*See Coleman v. Thompson*, 501 U.S. 722, 752 (1991) (claimant had no ineffective assistance of counsel claim where he had no constitutional right to an attorney in state post-conviction proceeding); *see also United States v. Allgood*, 48 F. Supp. 2d 554, 557-560 (E.D. Va. 1999) (claim that counsel was constitutionally ineffective for failing to appeal probation revocation, after being directed to do so, failed because claimant had no constitutional right to counsel in probation revocation proceeding).

### 3.  *Ineffective Assistance of Counsel - Attorney Lied About Time in Prison*

39.     For his third claim, Mr. Johnston contends, in conclusory allegations, that he was denied constitutionally effective assistance of counsel because his attorney lied to him about how much time he would have to serve in prison if he admitted the probation violations that he was charged with in 2005.[65]  Mr. Johnston seems to argue that his attorney told him that the sentence he would have to serve as a consequence of his probation revocation would not exceed the sentence he would have to serve as a consequence of his parole revocation, which was fifteen months, and also that his attorney told him that his parole was going to be revoked but it was not.[66]  The Court finds no merit to this claim.  First, even if the Court were to assume that Mr. Johnston had a constitutional right to effective assistance of counsel in his probation revocation proceeding, an attorney's erroneous sentence estimation or miscalculation does not rise to the level of ineffective assistance of counsel.  *See Lasiter v. Thomas*, 89 F.3d 699, 703 (10th Cir. 1999) (citing *United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir. 1993)).  Second, Mr. Johnston has made no showing that he was prejudiced by his attorney's alleged ineffective assistance, *i.e.*, that the outcome of the revocation proceeding would have been any different if his attorney had not incorrectly estimated or

---

[65]*See* Application at 7-9.

[66]*Id.* at 7.

miscalculated his sentence.  Clearly, any estimation of a sentence by an attorney, erroneous or not, is not binding on the court.  As a consequence, relief cannot be granted on this claim.

### 4.  Probation Revocation Unlawfully Induced by Unkept Promises

40.     For his fourth claim, as a claim separate and apart from his ineffective assistance of counsel claims, Mr. Johnston contends that his probation revocation was unlawfully induced by unkept promises because he was promised that his probation would end with his parole for a total of fifteen months and, instead, he was required to serve three years and three-hundred-one days in prison as a result of the probation revocation.[67]  He fails to identify the person who made this alleged promise, or the circumstances under which the alleged promise was made.  These allegations, which are conclusory and unsupported, are insufficient to warrant consideration in this proceeding.  *See Moore v. Gibson*, 195 F.3d 1152, 1180 n.17 (10th Cir. 1999) (court will not consider unsupported and undeveloped issues in federal proceeding for habeas relief under § 2254).

### C.  Conclusion

41.     The Court finds that habeas relief is not warranted on Mr. Johnston's claims because he has failed to allege or establish that the state district court's September 13, 2005, order was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or that it was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *See* 28 U.S.C. § 2254(d)(1)-(2).

---

[67]*Id.* at 9-11.

## RECOMMENDED DISPOSITION

The Court recommends that *Respondents' Motion to Dismiss Petition With Prejudice* (*Doc. 7*) be **GRANTED**, that Mr. Johnston's *Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody* (*Doc. 1*) be **DENIED** as without merit, and that this case be **DISMISSED WITH PREJUDICE**.

*Lourdes A. Martínez*
**LOURDES A. MARTÍNEZ**
**United States Magistrate Judge**